UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMY HENRY, a/k/a Amy Colborn,<br>    *Plaintiff*, | )<br>)<br>) | |
|     *vs*. | )<br>) | 1:09-cv-1523-JMS-TAB |
| MICHAEL J. ASTRUE, Commissioner of the<br>Social Security Administration,<br>    *Defendant*. | )<br>)<br>)<br>) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Amy Henry, a/k/a Amy Colborn, filed an application for Supplemental Social Security Income benefits on October 25, 2005, alleging disability since August 1, 2005. [R. 75-77.] Defendant Michael J. Astrue, the Commissioner of the Social Security Administration (the "Commissioner"), denied her application both initially and after reconsideration. An Administrative Law Judge ("ALJ") held a hearing in September 2008 and issued a decision in March 2009, finding that Ms. Henry was not disabled. [Dkt. 17.] Ms. Henry filed this action under 42 U.S.C. § 405(g), asking the Court to review the denial of her request for benefits.

### BACKGROUND

Ms. Henry was 34 years old at the time of her application for benefits. [R. 26.] She has a general equivalency diploma and no past relevant work experience. [*Id.*] Ms. Henry claims that she is entitled to disability benefits due to a seizure disorder that she contends meets the requirements of two listed impairments—Listings 11.02 and 11.03. Ms. Henry suffered from febrile seizures as an infant but did not experience further seizures until September 2005. [R. 477, 515.] The parties agree that during the relevant time period, Ms. Henry had both petit mal and grand mal seizures but dispute whether her disorder renders her disabled. [R. 21.]

At the hearing, Dr. Loyd Stump, a medical expert, testified that Ms. Henry did not meet the requirements of 11.02 and 11.03 because her antiepileptic drug levels fell below the therapeutic range, and she was not compliant with her prescribed treatment. [R. 719-20, 721.] Dr. Georgiann Pitcher testified regarding Ms. Henry's mental health—specifically, alcohol abuse and a previous suicide attempt. [R. 732-35.]

Vocational expert Robert Barber testified that despite various limitations, Ms. Henry could perform medium, light, or sedentary work and that work that she is capable of performing exists in significant numbers in the national economy. [R. 748.] Mr. Barber acknowledged that Ms. Henry's treating physician—Dr. Michael Chitwood—filled out a Seizure Residual Functional Capacity questionnaire indicating that she would need to take frequent unscheduled breaks and that the number of breaks could eliminate the jobs Ms. Henry could perform. [R. 749.]

Although the ALJ agreed with Ms. Henry that her seizure disorder was a severe impairment, he concluded that it did not satisfy the requirements of Listings 11.02 or 11.03. [R. 23.] Based on Dr. Stump's testimony, the ALJ found that Ms. Henry did not satisfy the requirements of 11.02 or 11.03 because she did not have therapeutic levels of antiepileptic medication in her system and there was no evidence of an absorption disorder, indicating Ms. Henry did not take her medication as prescribed. [R. 21, 23.]

The ALJ further concluded that Ms. Henry had a residual functional capacity ("RFC") to perform a range of medium work, [R. 23], and that there were jobs that exist in significant numbers in the national economy she could perform, such as laundry worker, packager, cashier, or information clerk, [R. 27]. The ALJ gave "little weight" to the opinions of Ms. Henry's treating physician because "they are conclusory," "do not explain why claimant's blood drug levels have

been low," and "are inconsistent with the treatment notes." [R. 26.] Ultimately, the ALJ concluded that Ms. Henry was not disabled and denied her application for benefits. [R. 27.]

**STANDARD OF REVIEW**

The Court's role in this action is limited to ensuring that "the ALJ applied the correct legal standard, and [that] substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, … can she perform her past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the

claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

## DISCUSSION

Ms. Henry's brief focuses almost exclusively on her contention that the ALJ erred by concluding that her seizure disorder does not satisfy the requirements of Listings 11.02 or 11.03 because he did not give controlling weight to her treating doctor's opinion. [Dkt. 20 at 14-20.] Ms. Henry raises a separate issue in the last paragraph of her brief by cursorily arguing that the ALJ erred by ignoring an RFC questionnaire completed by Ms. Henry's treating doctor that indicated that she needed frequent breaks, which, if true, the vocational expert confirmed could eliminate all jobs in the national economy. [Dkt. 20 at 20.]

### I. Is Ms. Henry's Seizure Disorder Conclusively Disabling? (Step Three)

Ms. Henry argues that she meets the requirements of impairment listings 11.02 and 11.03. Although the Commissioner does not dispute that Ms. Henry's seizures meet the frequency requirements of 11.02 and 11.03, he disputes that Ms. Henry's seizures have occurred "in spite of at least 3 months of prescribed treatment," as both of the listings require. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 11.02-11.03. The parties disagree about what the quoted phrase requires.

Section 11.00 expressly provides, "Under 11.02 and 11.03, the criteria can be applied <u>only if</u> the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 11.00 (added emphasis). Evidence in the record, however, shows that Ms. Henry admitted to her doctors that she wasn't taking her prescribed medicine. [R. 209, 215.] Specifically, Ms. Henry told her doctors that she did not take her antiepileptic medicine because it was "making her gain weight," [R. 347], and that she

- 4 -

was "not willing to restart" the medicine, [R. 345]. These admissions establish that Ms. Henry was not following the prescribed antiepileptic treatment. Section 11.00 is clear that an applicant meets Listings 11.02 and 11.03 "only if" the seizures continue despite "following prescribed antiepileptic treatment," which Ms. Henry was not doing.

Additionally, evidence in the record shows that the level of antiepileptic medication in Ms. Henry's blood fell below therapeutic levels on at least four occasions between October 2005 and March 2006. [R. 260, 262, 451, 254, 191-92, 183-85.] Social Security Ruling 87-6 notes that because there are effective clinical approaches to epilepsy, "more epileptic seizures are controllable and individuals who receive appropriate treatment are able to work." Consequently, most situations where seizures are not under control are a result of "the individual's noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself." *Id.* SSR 87-6 emphasizes that "unless convincing evidence is provided that subtherapeutic blood drug levels are due to abnormal absorption or metabolism, and the prescribed drug dosage is not itself inadequate, the conclusion should follow that the individual is not complying with the treatment regimen." SSR 87-6.

Ms. Henry argues that the ALJ should have given controlling weight to her treating physician's conclusion that her drug levels fell below the therapeutic range because of an "individual idiosyncrasy in absorption of metabolism of the drug." [Dkt. 20 at 18 (citing R. 713).] As the Commissioner points out, however, the treating physician's "opinion merely consisted of a single checked box on a form prepared by Plaintiff's attorney without any accompanying evidence or findings to support his opinion." [Dkt. 29 at 11.] Dr. Chitwood's cursory opinion does not comply with SSR 87-6, which requires that the treating physician support "a finding that low anticonvulsant blood levels are caused by idiosyncrasy in absorption or metabolism [with] specific

descriptive evidence."[1] *See also* SSR 87-6 (providing that unless "convincing evidence" is provided regarding abnormal absorption or metabolism, the conclusion "should follow that the individual is not complying with the treatment regimen"). Additionally, neither Ms. Henry nor Dr. Chitwood acknowledge Ms. Henry's admissions that she was not taking her medication because she was concerned about weight gain.

The ALJ adequately articulated his reasons for discounting the treating source's opinion, [R. 26]. The Court will not second guess his decision to give Dr. Chitwood's conclusions "little weight" because those conclusions were cursory and internally inconsistent with other evidence in the record. *See Wright v. Barnhart*, 2005 U.S. Dist. LEXIS 15452, 12-13 (S.D. Ind. 2005) (holding that "the ALJ has discretion to weigh conflicting opinions" and a "treating source's opinion should be given controlling weight . . . only if it is consistent with other substantial evidence in the case record"). Consequently, Ms. Henry's argument fails.

## II. Does Dr. Chitwood's RFC Questionnaire Show Ms. Henry Cannot Engage in Substantial Gainful Activity? (Step Five)

In the last paragraph of her brief, Ms. Henry argues that "the ALJ also ignored the Seizures Residual Functional Capacity Questionnaire filled out by Dr. Chitwood." [Dkt. 20 at 20.] Ms. Henry points out that Mr. Barber, the vocational expert, testified that Dr. Chitwood's com-

---

[1] The ALJ held the record open for thirty days after the hearing so that Dr. Chitwood could "give an explanation" supporting Ms. Henry's argument that she met the relevant listings. [R. 752.] Dr. Chitwood provided a one-page Medical Listing Review where he checked a box stating "Individual idiosyncrasy in absorption of metabolism of the drug" with no further explanation. [R. 713.] Ms. Henry argues that the ALJ should have required Dr. Stump to review this report after the hearing and that "the ALJ himself did not even mention it in his decision." [Dkt. 20 at 20.] The ALJ actually cited Dr. Chitwood's one-page report twice in his opinion, including during his explanation for giving Dr. Chitwood's conclusions "little weight." [R. 17, 26.] Because Dr. Chitwood's perfunctory conclusion does not contain "descriptive evidence" as required by SSR 87-6, it was not error for the ALJ not to require Dr. Stump to review it after the hearing.

ment in the questionnaire that she could need frequent unscheduled breaks at work would eliminate Ms. Henry's ability to engage in gainful employment. [R. 749.]

Ms. Henry gives this argument short shrift and does not cite any case law supporting her position. And contrary to Ms. Henry's assertion, the ALJ did not ignore Dr. Chitwood's RFC questionnaire; instead, he cited it but did not give it controlling weight for the reasons detailed in the previous section. [R. 26 (citing R. 592-96).] The ALJ adequately articulated his reasons for not relying on Dr. Chitwood's opinion, including the RFC questionnaire. Ms. Henry does not challenge the ALJ's conclusions regarding her RFC or her ability to engage in substantial gainful activity in any other respects.

## CONCLUSION

Ms. Henry seeks to receive benefits because she suffers from seizure disorder. Unlike other medical conditions, benefits for a seizure disorder can only be awarded if the disorder persists despite the claimant's compliance with prescribed treatment. The ALJ found ample evidence in the record to conclude that Ms. Henry failed to comply with her prescribed treatment. While the failure to take her medicine was certainly her choice, a consequence of that choice is that she cannot receive benefits.

"The standard for disability claims under the Social Security Act is stringent. . . . Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010) (per curiam). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Ms. Henry doesn't qualify for disability benefits. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

12/02/2010

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only</u>:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Michael G. Myers
mgmyers10@sbcglobal.net